UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Gary Allen Kachina,

        Plaintiff,

  v.

Lynn Dingle, Ronald Olson,
Thomas Schmidt, and Hans Meizinger,

        Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civ. No. 06-5125 ADM/JJG

_____

Gary Allen Kachina, *pro se*.

Margaret E. Jacot, Esq., Office of the Minnesota Attorney General, St. Paul, MN, on behalf of Defendants.
_____

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for consideration of Objections filed by Plaintiff Gary Allen Kachina ("Kachina") [Docket No. 79] and by Defendants Lynn Dingle ("Dingle"), Ronald Olson ("Olson"), Thomas Schmidt ("Schmidt"), and Hans Meizinger ("Meizinger") [Docket No. 80] to Magistrate Judge Jeanne J. Graham's May 22, 2008, Report and Recommendation ("R&R") [Docket No. 78]. Kachina asserts claims under 42 U.S.C. § 1983 alleging that Defendants failed to protect him from harm in prison. Judge Graham recommends that Defendants' Motion to Dismiss and for Summary Judgment [Docket No. 48] be granted in part and denied in part. The Court will also address Kachina's Motion for Summary Judgment [Docket No. 81], Motion for Appointment of Counsel [Docket No. 87], and Motion for Continuance of Trial [Docket No. 88]. For the reasons stated below, Kachina's Objections are overruled, Defendants' Objections are overruled in part and sustained

in part, and Kachina's Motions are denied.

## II. BACKGROUND

In August 2004, a Hennepin County jury convicted Kachina of two counts of first-degree burglary in violation of Minnesota law. Kachina was sentenced to fifty-three months. The Minnesota Department of Corrections (the "DOC") assigned Kachina to the Minnesota Correctional Facility in St. Cloud, Minnesota, before transferring him to the Minnesota Correctional Facility in Moose Lake, Minnesota ("Moose Lake"), in February 2005. Ebeling Aff. [Docket No. 52] Ex. A.

DOC policies allowed Kachina and other Native American prisoners to participate in pipe ceremonies and sweat lodges. Bottomley Aff. [Docket No. 50] ¶ 4. Native American prisoners were also allowed to have medicine bags containing tobacco for use in designated and approved ceremonies, provided the bag was sealed when not in ceremonial use. Nummela Aff. [Docket No. 59] ¶ 3.

On August 5, 2005, a Moose Lake corrections officer found an unsealed medicine bag in Kachina's cell. Id. Kachina told investigators that he had given his tobacco to another prisoner. Strom Aff. [Docket No. 65] ¶ 4. The investigators searched the prisoner named by Kachina and found unsealed tobacco and homemade alcohol. Id. ¶ 6. The prisoner was disciplined for these infractions. Id.

During the investigation of the medicine bag incident, Kachina reported to Moose Lake authorities that the other Native American prisoners "had a hit out on him" because he jeopardized the medicine bag ceremonies by violating Moose Lake's policies, and because he snitched on another prisoner. Id. ¶ 7, Ex. A. As a result, Moose Lake officials transferred

Kachina to segregation. On September 8, 2005, the DOC transferred Kachina to the Minnesota Correctional Facility in Stillwater, Minnesota ("Stillwater"). Ebeling Aff. Ex. B.

Kachina's reputation as a snitch followed him from Moose Lake to Stillwater. A Stillwater prisoner named Robert Forrest was at Moose Lake when the medicine bag incident occurred, and he informed other Stillwater Native American prisoners that Kachina was a snitch. Kachina Dep. (Jacot Aff. [Docket No. 56] Ex. A) at 13. While at Stillwater, Kachina complained many times to prison officials that the other Native American prisoners were threatening him and intimidating him. Stenseth Aff. [Docket No. 64] ¶ 6. Judge Graham's R&R thoroughly recites the history of Kachina's complaints and the investigations by the Stillwater prison officials. R&R at 3-6. This Court will recite only the facts relevant to the named Defendants.

On September 21, 2006, Kachina complained to Lisa Stenseth, a corrections case manager, that he did not feel safe in Cell Hall B West. Stenseth Aff. ¶ 4. On September 22, 2006, Defendant Schmidt, a Stillwater corrections sergeant, spoke with Kachina about his concerns. Schmidt Aff. ¶ 3. Kachina was moved to Cell Hall D pending the completion of Schmidt's investigation and a decision by the Stillwater Incompatibility Review Committee. Id.

Schmidt learned from Stenseth that Kachina had named five prisoners who were threatening him, including two who lived in Cell Hall B West. Id. ¶ 3. Stenseth also reported that Kachina alleged that a group of Native Americans had gathered outside his cell to intimidate him. Id. ¶ 3. Schmidt reviewed relevant prison videotape but did not see the gathering alleged by Kachina. Id. ¶ 3. Schmidt also interviewed the two prisoners living in Cell Hall B West whom Kachina had identified as threats. Id. ¶ 3. One prisoner stated he did not know Kachina; the other stated he had no problem with Kachina. Id. ¶ 3.

3

The Incompatibility Review Committee, relying on Schmidt's investigation, determined there was insufficient evidence to separate Kachina from the two identified prisoners in Cell Hall B West. Parks Aff. [Docket No. 61] ¶ 4. On September 28, 2006, Kachina returned to Cell Hall B West. Id. That same day, Kachina wrote a note to prison staff stating that he felt like harming himself. Frederick Aff. [Docket No. 54] ¶ 3. Prison staff placed Kachina in segregation. Id.

On October 3, 2006, Kachina gave a Stillwater corrections officer two additional names of prisoners he feared would harm him, and the name of a witness who would corroborate Kachina's claims. Schmidt Aff. ¶ 4. Schmidt interviewed the two prisoners who were allegedly threats to Kachina. Id. Both prisoners stated they did not have any problems with Kachina. Id. Kachina's witness stated he had not heard other prisoners threaten Kachina. Id.

Also on October 3, 2006, Kachina wrote a note to the assistant warden asking that he be placed in Cell Hall D after his release from segregation. King Aff. [Docket No. 57] ¶ 2. The assistant warden approved Kachina's request. Id.

On December 8, 2006, Defendant Meizinger, a corrections officer, approached Kachina in his cell in segregation[1] to discuss a complaint Kachina had written requesting clean socks. Meizinger Aff. [Docket No. 58] ¶ 4. Kachina testified that Meizinger yelled at him to stop complaining and telling on the inmate laundry workers, and that other inmates overheard Meizinger. Kachina Dep. at 49-50. Meizinger then asked an inmate laundry worker to provide a clean set of clothing to Kachina. Meizinger Aff. ¶ 4. Recollections differ regarding Meizinger's conversation with the inmate laundry worker. Kachina has submitted declarations of two

---

[1] It appears Kachina frequently violated the Stillwater facility's policies in an effort to be placed in segregation. Stenseth Aff. ¶ 6.

inmates—Ronald Brantley ("Brantley") and Brent Tanner ("Tanner")—stating that Meizinger told the laundry worker that Kachina was writing complaints and telling on inmates and staff for not doing the[ir] job." Brantley Decl. [Docket No. 8]; Tanner Decl. [Docket No. 9]. Meizinger avers he only asked the inmate laundry worker to provide clothing to Kachina. Meizinger Aff. ¶¶ 4-6. Meizinger denies telling anyone that Kachina was writing complaints and telling on other inmates. Id. ¶ 5. At his deposition, Brantley testified only that Meizinger told the inmate laundry workers that Kachina had complained that he had not received clothes in five days. Brantley Dep. (Jacot Aff. Ex. B) at 20. Defendants' counsel was unable to depose Tanner because he could not be located. Jacot Aff. ¶ 5. Brantley testified that after Meizinger's conversation with the inmate laundry worker, the other inmates called Kachina a snitch. Brantley Dep. at 19-20. One of the inmate laundry workers spoke with Ian Archer ("Archer"), an inmate who was known for assaulting snitches. Id. at 21.

On December 10, 2006, Kachina was assaulted by Archer. Tanner's Declaration states that prior to the assault, Defendant Olson, a corrections officer, told Archer that Kachina "is a piece of shit snitch and that he was telling on everybody." Tanner Decl. at 2. The assault occurred shortly after the prisoners were released from their cells. Kachina Dep. at 50-52. Archer asked to see Kachina's drawings. Brantley Dep. at 26. When Kachina turned to get his drawings, Archer began hitting Kachina on the head with an improvised weapon consisting of a bar of soap in a sock. Id. During the assault, Archer and other inmates called Kachina a snitch. Id. at 22.

Prison staff broke up the altercation. As a result of Archer's assault, Kachina's lips and gums bled severely, and he suffered bruising and head and back pain. Pl.'s Mem. [Docket No.

82] at 6. Kachina claims he has suffered depression, anxiety attacks, and he feared for his life for the remainder of his time in prison. Id.[2]

On December 29, 2006, Kachina initiated this litigation. Kachina asserts claims under 42 U.S.C. § 1983 alleging that Defendants failed to protect him from harm. Kachina asserts claims against Schmidt, Meizinger, Olson, and former Stillwater warden Dingle in their individual and official capacities.

Defendants filed a Motion to Dismiss and for Summary Judgment. Judge Graham recommends that: (1) Defendants' Motion for Summary Judgment be granted as to Dingle and Schmidt; (2) Defendants' Motion for Summary Judgment be denied as to Meizinger and Olson; and (3) Defendants' Motion to Dismiss be granted as to Kachina's claims against Defendants in their official capacities.

### III. DISCUSSION

**A.      Standard of Review**

    **1.      Magistrate Judge's Report and Recommendation**

"The district judge must determine de novo any part of the magistrate judge's [recommended] disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

    **2.      Motion to Dismiss for Lack of Subject-Matter Jurisdiction**

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for lack of subject-matter jurisdiction. On a motion to dismiss under Rule

---

[2] Kachina was released from prison on July 14, 2008.

12(b)(1), a defendant may challenge the complaint on its face, or the defendant may contest the truthfulness of the alleged facts. Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990). Here, Defendants' Motion to Dismiss challenges the facial validity of the official-capacity claims in Kachina's Amended Complaint. Thus, the Court "restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion under Rule 12(b)(6)." Id. (citations omitted). In considering a motion to dismiss under Rule 12(b)(6), the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994); Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993). Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the nonmoving party. Ossman, 825 F. Supp. at 880.

### 3. Motion for Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**B.     The Parties' Objections**

Kachina asserts claims under 42 U.S.C. § 1983, which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

The Eighth Amendment requires prison officials "to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994) (quotation omitted). To prevail on a § 1983 failure-to-protect claim, a prisoner must show: (1) that he was incarcerated under conditions posing a substantial risk of serious harm; and (2) that the prison official was deliberately indifferent to the risk. Young v. Selk, 508 F.3d 868, 871-72 (8th Cir. 2007). "An official is deliberately indifferent if he or she actually knows of the substantial risk and fails to respond reasonably to it." Id. at 873. The Eighth Circuit has held that a prison guard's labeling of an inmate as a snitch can violate the inmate's constitutional right to protection from harm. Irving v. Dormire, 519 F.3d 441, 451 (8th Cir. 2008).

### 1.     Individual-Capacity Claim Against Schmidt

This Court endorses Judge Graham's conclusion that Kachina's § 1983 claim against Schmidt in his individual capacity does not survive summary judgment. The record reflects that Schmidt investigated Kachina's complaints regarding inmate threats in September and October 2006. In his Amended Complaint, Kachina alleged that Schmidt told the inmates he interviewed during his investigations that Kachina was a snitch. Am. Compl. Statement of Claim at 3. However, Kachina conceded at his deposition that he had no basis for his allegation that Schmidt had labeled him a snitch. Kachina Dep. at 44. The record reflects that Schmidt acted reasonably as a matter of law, and there is no evidence that Schmidt was deliberately indifferent to a

substantial risk of harm to Kachina. Therefore, Kachina's objection is overruled and Schmidt is granted summary judgment on Kachina's individual-capacity § 1983 claim.

### 2. Individual-Capacity Claim Against Dingle

This Court also agrees with Judge Graham's recommendation that former warden Dingle be granted summary judgment on Kachina's individual-capacity claim against her. A supervisor is liable under § 1983 only if the supervisor:

> directly participates in a constitutional violation or if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights. The plaintiff must demonstrate that the supervisor was deliberately indifferent to or tacitly authorized the offending acts. This requires a showing that the supervisor had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation.

Andrews v. Fowler, 98 F.3d 1069, 1078 (8th Cir. 1996). There is neither evidence that Dingle explicitly authorized her staff to tell prisoners that Kachina was a snitch nor that Dingle tacitly authorized or was deliberately indifferent to such conduct. Therefore, Kachina's objection is overruled and Dingle is granted summary judgment on Kachina's individual-capacity claim against her.

### 3. Individual-Capacity Claim Against Meizinger

Judge Graham determined there is a genuine issue of material fact regarding Kachina's failure-to-protect claim against Meizinger. Kachina alleges Meizinger told the inmate laundry workers that Kachina was a snitch and that Kachina had written complaints that the laundry workers were not doing their jobs. Am. Compl. Statement of the Claim at 5. Kachina relies on Brantley's and Tanner's Declarations stating that Meizinger told the laundry workers that Kachina was writing complaints about the laundry workers. Brantley Decl.; Tanner Decl. However, at his deposition Brantley testified only that Meizinger asked the laundry workers to

provide clean clothing to Kachina and that Meizinger told the laundry workers that Kachina had reported that he had not received clean clothing in five days. Brantley Dep. at 20.

This conduct does not amount to an Eighth Amendment violation. Meizinger reasonably responded to Kachina's complaint by telling the laundry workers to provide clothing to Kachina. Although the laundry workers apparently became angry that Kachina had complained, Meizinger avers that complaints regarding missing clothing were common at Stillwater and he did not have any reason to believe that requesting clothing for Kachina would place Kachina at substantial risk of serious harm. Meizinger Aff. ¶ 7. Moreover, regardless of whether Tanner's Declaration is true and Meizinger told the laundry workers that Kachina had written a complaint, the laundry workers would have inferred from Meizinger's request that Kachina had complained. On this record, Kachina cannot prevail on his claim that Meizinger's response to Kachina's complaint regarding clothing amounted to deliberate indifference to a risk of serious bodily harm. Therefore, Defendants' objection is sustained and Meizinger is granted summary judgment on Kachina's individual-capacity claim.

### 4.     Individual-Capacity Claim Against Olson

Judge Graham recommends that Defendants' Motion for Summary Judgment be denied on Kachina's claim against Olson in his individual capacity. Tanner's Declaration is the only evidence supporting Kachina's § 1983 failure-to-protect claim against Olson. In his Declaration, Tanner states that he heard Olson tell Archer on the morning of December 10, 2006, that Kachina "is a piece of shit snitch and that he was telling on everybody" and that shortly thereafter Archer assaulted Kachina. Tanner Decl. at 2.

This Court agrees that Tanner's Declaration creates a genuine issue of material fact

regarding whether Olson exposed Kachina to a substantial risk of serious harm by telling Archer that Kachina was a snitch.  Defendants argue Olson's alleged statement to Archer did not increase the risk of harm to Kachina because "everyone already knew that Kachina was a 'snitch.'"  Objections at 5.  However, even though Kachina's reputation may have already placed him at risk of substantial harm, Olson's alleged statement to Archer may have increased the risk.  Indeed, Archer assaulted Kachina shortly after Olson allegedly told Archer that Kachina was a "piece of shit snitch."  Therefore, there is a genuine issue of fact regarding whether Olson violated the Eighth Amendment by telling Archer that Kachina was a snitch.

   Defendants argue that even if there is a genuine issue regarding whether Olson's conduct violated the Eighth Amendment, Olson is entitled to summary judgment on the basis of qualified immunity.  When a defendant asserts qualified immunity, a court must perform two inquiries in proper sequence.  Coleman v. Parkman, 349 F.3d 534, 537-38 (8th Cir. 2003).  The first inquiry is "whether, when viewed in the light most favorable to the plaintiff, the alleged facts show the official's conduct violates a constitutional right."  Id. at 538.  If the answer is yes, then the second inquiry is whether the right was clearly established.  Id.  "'The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'"  Id. (quoting Saucier v. Katz, 533 U.S. 194, 202 (2001)).

   The Court has already determined there is a genuine issue regarding whether Olson violated Kachina's Eighth Amendment rights.  Regarding the second inquiry of the qualified immunity analysis—that of a clearly established right—Defendants do not dispute Judge Graham's determination that federal case law gave Olson "fair warning" that labeling a prisoner

11

a snitch exposes a prisoner to a serious risk of violence at the hands of other prisoners. R&R at 17; see Irving, 519 F.3d at 451 (finding a reasonable prison guard in 2005 would have known that labeling an inmate a snitch would violate his constitutional right to protection from harm). Instead, Defendants argue "it would not have been clear to Olson that it would put Kachina in danger if an inmate who already knew Kachina was a 'snitch' was told that Kachina was a 'snitch.'" Objections at 6. However, this Court finds that a reasonable officer in Olson's situation would know that regardless of a prisoner's reputation amongst other prisoners for being a snitch, the danger to a prisoner is likely to increase when a prison guard validates to prisoners that a particular prisoner is a snitch. Therefore, Olson is not entitled to qualified immunity. Defendants' Objection is overruled and their Motion for Summary Judgment is denied as to Olson.[3]

### 5. Official-Capacity Claims Against Defendants

Judge Graham recommends that Kachina's damages claim against Defendants in their official capacities be dismissed for lack of subject-matter jurisdiction. "A claim for damages against a state employee in his official capacity is barred under the Eleventh Amendment." Andrus ex rel. Andrus v. Arkansas, 197 F.3d 953, 955 (8th Cir. 1999). Defendants were state employees at all relevant times. Therefore, this Court lacks subject-matter jurisdiction over Kachina's official-capacity claims for damages. Kachina's objection to the dismissal of his official-capacity claims is overruled and Defendants' Motion to Dismiss is granted.

### C. Kachina's Motions

---

[3] Although Defendants have not asserted a hearsay argument at this procedural stage, the Court notes there may be significant hearsay problems regarding the admissibility of Tanner's Declaration if Tanner cannot be located to testify at trial.

On June 12, 2008, Kachina filed a Motion for Summary Judgment. However, the Amended Pretrial Order [Docket No. 36] set a January 31, 2008, deadline for filing dispositive motions. Under Federal Rule of Civil Procedure 16(b)(4), "[a] schedule may be modified only for good cause and with the judge's consent." Kachina has not provided any explanation for his failure to timely file his Motion for Summary Judgment. Kachina's Motion for Summary Judgment is denied as untimely.

Kachina has also filed a Motion for Appointment of Counsel. "There is no constitutional or statutory right for an indigent to have appointed counsel in a civil case." Wiggins v. Sargent, 753 F.2d 663, 668 (8th Cir. 1985). "When determining whether to appoint counsel for an indigent civil litigant, the district court considers relevant factors such as the complexity of the case, the ability of the indigent litigant to investigate the facts, the existence of conflicting testimony, and the ability of the indigent to present his claim." Stevens v. Redwing, 146 F.3d 538, 546 (8th Cir. 1998). Kachina's only surviving claim against Olson is straightforward and the disputed facts are narrow in scope. It is unnecessary for Kachina to investigate the facts because discovery has ended. Most importantly, Kachina has demonstrated that he is able to present his claim. The Court denies Kachina's Motion for Appointment of Counsel.

Finally, Kachina has moved to continue the trial. However, no trial date has been established for this matter. Therefore, Kachina's Motion for Continuance of Trial is denied.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff Gary Allen Kachina's ("Kachina") Objections [Docket No. 79] to Magistrate Judge Jeanne J. Graham's May 22, 2008, Report and Recommendation ("R&R) [Docket No. 78] are **OVERRULED**;

2. Defendants Lynn Dingle ("Dingle"), Ronald Olson ("Olson"), Thomas Schmidt ("Schmidt"), and Hans Meizinger's ("Meizinger") Objections [Docket No. 80] to the R&R are **OVERRULED IN PART AND SUSTAINED IN PART**;

3. Defendants' Motion to Dismiss [Docket No. 48] is **GRANTED** as to Kachina's claims against Defendants in their official capacities;

4. Defendants' Motion for Summary Judgment [Docket No. 48] is **GRANTED** as to Kachina's claims against Schmidt, Dingle, and Meizinger in their individual capacities; and

5. Defendants' Motion for Summary Judgment is **DENIED** as to Kachina's claims against Olson in his individual capacity.

BY THE COURT:

    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: August 12, 2008.